1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| RHONDA NAGLICH,                )<br>                                          )<br>                Plaintiff,        )<br>                                          )<br>v.                                       )<br>                                          )<br>CAROLYN W. COLVIN, Acting   )<br>Commissioner of Social Security )<br>Administration,                    )<br>                                          )<br>                Defendant.       )<br>_____)| Case No. 2:15-cv-01256-APG-CWH<br><br>**REPORT AND RECOMMENDATION** |

**INTRODUCTION**

This case involves judicial review of an administrative action by the Commissioner of Social Security ("defendant") denying Plaintiff Rhonda Naglich's ("plaintiff") application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Before the Court is plaintiff's Motion for Reversal or Remand (doc. # 16), filed October 15, 2015, and defendant's Response and Cross-Motion to Affirm (docs. # 19, # 20),[1] filed December 16, 2015. Plaintiff did not file a reply. This action was referred to the undersigned magistrate judge for a report of findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B)-(C) and Local Rule IB 1-4.

**BACKGROUND**

In March 2009, plaintiff applied for disability insurance benefits and supplemental security income, alleging an onset date of February 27, 2009. AR[2] 289-301. Plaintiff's claim was denied initially on August 26, 2009, and upon reconsideration on March 1, 2010. AR 176-79, 181-88. A hearing was held before an Administrative Law Judge ("ALJ") on May 3, 2011, and a decision was entered on

---

[1] Defendant filed both an opposition to plaintiff's motion and a cross-motion to affirm. See Docs. # 19, # 20. This Court's review of these two documents reveals that the arguments presented are identical. Therefore, this Court refers only to defendant's cross-motion, doc. # 19, even though an identical argument is presented in defendant's opposition, doc. # 20.

[2] AR refers to the administrative record lodged with this Court. See Doc. # 15.

1    September 16, 2011. AR 99-145, 150-70. Plaintiff requested a review of the ALJ's decision, which the

2    Appeals Council granted, and remanded the case for further proceedings. AR 171-75, 237-38. The ALJ

3    held another hearing on August 5, 2013. AR 41-98. On November 15, 2013, the ALJ issued a decision

4    finding plaintiff was not disabled from February 27, 2009, through the date of the decision. AR 18-34.

5    Thereafter, plaintiff requested another review of the ALJ's decision. AR 12-14. The Appeals Council

6    denied plaintiff's request, rendering the ALJ's decision final.[3]  AR 1-6. Plaintiff, on July 2, 2015,

7    commenced the instant action for judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c). See Doc.

8    # 1; see also Doc. # 3.

9                                          **DISCUSSION**

10   **1.    Legal Standards**

11         **a.    Judicial Standard of Review**

12         The court reviews administrative decisions in social security disability benefits cases under 42

13   U.S.C. § 405(g). Section 405(g) states that "[a]ny individual, after any final decision of the Commissioner

14   of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy,

15   may obtain a review of such decision by a civil action . . . brought in the district court of the United States

16   for the judicial district in which the plaintiff resides." Akopyan v. Barnhart, 296 F.3d 852, 854 (9th Cir.

17   2002). The court may enter, "upon the pleadings and transcripts of the record, a judgment affirming,

18   modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding

19   the case for a rehearing." Id. The Ninth Circuit reviews de novo a decision issued by a district court in

20   such cases. Batson v. Commissioner, 359 F.3d 1190, 1193 (9th Cir. 2003).

21         The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42

22   U.S.C. § 405(g); Ukolov v. Barnhart, 420 F.3d 1002 (9th Cir. 2005). However, these findings may be set

23   aside if they are based on legal error or not supported by substantial evidence. See Stout v. Comm'r, Soc.

24   Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006); see also Thomas v. Barnhart, 278 F.3d 947, 954 (9th

25   Cir. 2002). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such

26   relevant evidence as a reasonable mind might accept as adequate to support a conclusion." See Andrews

27   v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see also Bayliss v. Barnhart, 427 F.3d 1211, 1214 n. 1 (9th

28   Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence,

---

[3] The ALJ's decision becomes the final administrative decision of defendant.

a court reviews "the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); see also Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). The Commissioner's findings must be upheld if supported by inferences reasonably drawn from the record. Batson, 359 F.3d at 1193. When the evidence supports more than one rational interpretation, a court must defer to the Commissioner's interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005); see also Flaten v. Sec'y of Health and Human Serv., 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence.

It is incumbent on the ALJ to make specific findings so the court does not speculate as to the basis of the findings when reviewing the Commissioner's decision. Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are not sufficient. Lewin v. Schweiker, 654 F.2d 631, 634 (9th Cir. 1981). The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." Id.

**b.    Disability Evaluation Process**

An individual seeking disability benefits has the initial burden of proving disability. See Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995). An individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." See 42 U.S.C. § 423(d)(1)(A). The individual must provide "specific medical evidence" in support of the claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. Batson, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. See 20 C.F.R. §§ 404.1520 and 416.920; see also Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that he or she can make a finding of disability or nondisability, a determination will be made and no further evaluation is required. See 20 C.F.R. §§ 404.1520(a)(4) and

1   416.920(a)(4); see also Barnhart v. Thomas, 540 U.S. 20, 24 (2003). The first step requires the ALJ to
2   determine whether the individual is currently engaging in substantial gainful activity. 20 C.F.R. §§
3   404.1520(b) and 416.920(b). Substantial gainful activity is defined as work activity that is both substantial
4   and gainful; it involves doing significant physical or mental activities usually for pay or profit. 20 C.F.R.
5   §§ 404.1572(a)-(b) and 416.972(a)-(b). If the individual is currently engaging in substantial gainful
6   activity, then a finding of not disabled is made. If the individual is not engaging in substantial gainful
7   activity, then the analysis proceeds to step two.

8      The second step addresses whether the individual has a medically determinable impairment, or
9   combination of impairments, that is severe and significantly limits performance of basic work activities.
10  20 C.F.R. §§ 404.1520(c) and 416.920(c). An impairment or combination of impairments is not severe
11  when medical and other evidence establish only a slight abnormality or a combination of slight
12  abnormalities that would have no more than a minimal effect on the individual's ability to work. See 20
13  C.F.R. §§ 404.1521 and 416.921; Social Security Rulings ("SSR") 85-28, 96-3p, and 96-4p.[4] If the
14  individual does not have a severe medically determinable impairment or combination of impairments, then
15  a finding of not disabled is made. If the individual has a severe medically determinable impairment or
16  combination of impairments, then the analysis proceeds to step three.

17     The third step requires the ALJ to determine whether the individual's impairments or combination
18  of impairments meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart
19  P, Appendix 1. See 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926).
20  If the individual's impairment or combination of impairments meet or equal the criteria of a listing and
21  meet the duration requirement (20 C.F.R. §§ 404.1509 and 416.909), then a finding of disabled is made.
22  20 C.F.R. §§ 404.1520(h) and 416.920(h). If the individual's impairment, or combination of impairments,
23  does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds
24  to step four, but, before moving to step four, the ALJ must first determine the individual's residual
25  functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e) and 416.920(e).

26     The RFC is a function-by-function assessment of the individual's ability to do physical and mental

27
28      [4] An SSR constitutes the Social Security Administration's official interpretation of the statute and its regulations. See Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1224 (9th Cir. 2009); see also 20 C.F.R. § 402.35(b)(1). An SSR is entitled to some deference as long as it is consistent with the Social Security Act and regulations. Bray, 554 F.3d at 1223 (finding ALJ erred in disregarding SSR 82-41).

4

work-related activities on a sustained basis despite limitations from impairments. See SSR 96-8p. In determining the RFC, an ALJ must consider all relevant evidence, including all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. §§ 404.1529 and 416.929; SSR 96-4p and 96-7p. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, an ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527 and 416.927, and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

At step four, the ALJ must determine whether the individual has the RFC to perform past relevant work, which means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last fifteen years or fifteen years prior to the date that disability must be established. See 20 C.F.R. §§ 404.1520(f) and 416.920(f). In addition, the work must have lasted long enough for the individual to learn the job and performed as substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), and 416.965. If the individual has the RFC to perform his past work, then a finding of not disabled is made. If the individual is unable to perform any past relevant work or does not have any, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g) and 416.920(g). If he is able to do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence that demonstrates other work exists in significant numbers in the national economy that the individual can do. Yuckert, 482 U.S. at 141-42.

**2.    The ALJ's Decision**

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. AR 19-29. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity from the alleged onset date of February 27, 2009. AR 21. At step two, the ALJ found that

1   plaintiff had severe impairments of carotid stenosis, COPD, neck and back pain with cervical spondylosis,

2   chronic pain, and a history of fibromyalgia.  Id.  At step three, the ALJ found that plaintiff did not have

3   an impairment or combination of impairments that met or medically equaled a listed impairment in 20

4   C.F.R. Part 404, Subpart P, Appendix 1.  AR 26.  Under step four, the ALJ found that plaintiff had the

5   RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), but with certain

6   limitations.  AR 26.  Specifically, the ALJ found that plaintiff: (1) could not climb ladders, ropes, or

7   scaffolds; (2) could perform postural activities occasionally; and (3) must avoid concentrated exposure

8   to extreme heat and cold, and chemicals and pulmonary irritants such as smoke, dust, gases, fumes, odors,

9   and poorly ventilated areas.  Id.  The ALJ also determined that plaintiff could perform past relevant work

10  as a bookkeeper and customer service person, subject to the aforementioned limitations.   AR 32.

11  Accordingly, the ALJ concluded that plaintiff was not disabled from the alleged onset date of February 27,

12  2009 until the date of the decision.  AR 34.

13  **3.**     **Analysis**

14          Plaintiff seeks reversal or remand of the ALJ's decision, claiming the ALJ erred by failing to

15  properly assess plaintiff's RFC.  Plaintiff explains that while she lacks the ability to perform past relevant

16  work and to engage in full-time employment, the ALJ concluded to the contrary because he failed to obtain

17  the opinion of a medical expert specializing in rheumatology and, instead, relied on two examining

18  physicians' opinions.  As a result, plaintiff contends that the ALJ failed to comprehend the nature and

19  severity of fibromyalgia to properly support his finding regarding plaintiff's RFC.

20          Defendant, in opposition, argues that the ALJ reasonably determined plaintiff's RFC by weighing

21  the opinions of several physicians, along with other evidence, to conclude that plaintiff's claim of

22  fibromyalgia was unsupported by the overall record.  Defendant first argues that Dr. Jeffrey John Crudo

23  ("Crudo") examined plaintiff in November 2009 and found that plaintiff was:  (1) in no acute distress;

24  (2) alert, awake, and oriented; (3) experiencing minimal trigger point tenderness; (4) able to display good

25  recent and remote memory; (5) able to display appropriate mood and affect; and (6) not reporting

26  symptoms generally associated with fibromyalgia, including fatigue and sleep issues, and instead reporting

27  that her medication helped her sleep.  Doc. # 19 at 4 (citing AR 27, 548-49).  Defendant next argues that

28  during plaintiff's April 2011 follow-up visit, plaintiff admitted that her symptoms were "well controlled"

1    and that Lortab controlled her pain, leading the physician to conclude that plaintiff's condition was pain

2    syndrome and not fibromyalgia. Id. at 5 (citing AR 29, 681). Defendant then argues that, in August 2011,

3    plaintiff reported trouble sleeping because of her hot room, managing without her pain medication, "doing

4    fine," and not refilling her pain medication since April 2011, with the physician concluding that plaintiff's

5    chronic pain syndrome was stable. Id. (citing AR 29, 685). Nevertheless, the physician referred plaintiff

6    to the University Medical Center ("UMC"), with records revealing that plaintiff did not return to the UMC

7    until one year later, thereby indicating that plaintiff was not troubled by her symptoms. Id. (citing AR 29,

8    689). Defendant also argues that, in August 2012, Dr. Suresh K. Tawney observed, among others, that

9    the results of plaintiff's physical examination were unremarkable, plaintiff's pain was a 5/10 and tolerable

10   with medication, and plaintiff's clinical history was not suggestive of fibromyalgia but of chronic arthritis.

11   Id. (citing AR 29, 690, 694-95, 728-29).

12        Moreover, while plaintiff accuses the ALJ of his purportedly insufficient medical understanding

13   of fibromyalgia, defendant points out that plaintiff fails to state additional limitations that the ALJ failed

14   to consider, or to provide evidence in support of additional limitations. Notably, per defendant, the ALJ

15   found plaintiff not fully credible, with plaintiff's own treating physicians rejecting fibromyalgia as an

16   appropriate diagnosis for plaintiff's condition. Further, while plaintiff complains that Dr. Simon J. Farrow

17   and Dr. Zev Lagstein ("Lagstein") are not rheumatologists, defendant argues that neither physician had

18   to be a rheumatologist to offer a medical opinion regarding plaintiff's "essentially normal" condition based

19   on medical records, physical examinations, and patient interviews. Doc. # 19 at 6-7 (citing AR 615-23,

20   713-16). Indeed, defendant points out that the record reflects opinions of physicians who considered

21   fibromyalgia as a possible condition, and plaintiff fails to cite to any rheumatologist opinions that should

22   have been accorded greater weight by the ALJ. Lastly, while plaintiff contends that the ALJ failed to

23   follow the Appeals Council's directive to obtain a medical expert at the hearing, defendant points out that

24   plaintiff consulted with Lagstein less than two weeks before the hearing, with the Appeals Council

25   subsequently denying plaintiff's request for review, thereby indicating that the ALJ had not taken an action

26   inconsistent with the Appeals Council's remand order. Id. at 8 (citing 1, 713-16)  Plaintiff did not file a

27   reply.

28   //

1        This Court is not persuaded by plaintiff's arguments, and agrees with defendant.  The record is

2   replete with opinions of various physicians who considered and rejected fibromyalgia as a possible

3   condition.  This, along with plaintiff's self-reported activities, ability to manage her pain with (or without)

4   medication, and generally unremarkable condition based on objective medical evidence leads this Court

5   to conclude that the ALJ did not err in finding that plaintiff's symptoms are not suggestive of fibromyalgia.

6   The Court also finds that plaintiff fails to provide facts or any legal authority to support her assertion that

7   only a rheumatologist is qualified to assess her condition.   Ultimately, this Court finds that the ALJ

8   carefully reviewed and weighed all relevant medical opinions, regulations, and guidelines in determining

9   plaintiff's RFC and in rendering a final decision in this case.  Contrary to plaintiff's assertions, moreover,

10  the ALJ provided specific, clear, and convincing reasons for deciding the issue of plaintiff's RFC.  As

11  such, the Court finds that the ALJ's decision was based on substantial evidence, free from legal error.

12                                      **CONCLUSION AND RECOMMENDATION**

13       Accordingly, **IT IS HEREBY RECOMMENDED** that plaintiff's Motion for Reversal or Remand

14  (doc. # 16) be **denied**.

15       **IT IS FURTHER RECOMMENDED** that defendant's Cross-Motion to Affirm (doc. # 19) be

16  **granted**.

17                                             **NOTICE**

18       Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in

19  writing and filed with the Clerk of the Court within fourteen (14) days.  The U.S. Supreme Court has held

20  that the courts of appeal may determine that an appeal has been waived due to the failure to file objections

21  within the specified time. Thomas v. Arn, 474 U.S. 140, 142 (1985).  This circuit has also held that failure

22  to file objections within the specified time, and failure to properly address and brief the objectionable

23  issues, waives the right to appeal the district court's order and/or appeal factual issues from the order.

24  Martinez v. Ylst, 951 F.2d 1153, 1157 (9th Cir. 1991); Britt v. Simi Valley United Sch. Dist., 708 F.2d

25  452, 454 (9th Cir. 1983).

26       DATED:  May 4, 2016

27

28                                   _____
                                  **C.W. Hoffman, Jr.**
                                  **United States Magistrate Judge**